Betty SANKOVICH, Plaintiff-Appellant,

v.

The LIFE INSURANCE COMPANY OF NORTH AMERICA and Credit Life Insurance Company, Defendants-Appellees.

No. 79–4184.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 11, 1980.

Decided March 2, 1981.

A. Clifford Edwards, Berger, Anderson, Sinclair & Murphy, P. C., Billings, Mont., on brief, for plaintiff-appellant.

Terry Spear, Crowley, Haughey, Hanson, Toole & Dietrick, Billings, Mont., James L. Jones, Anderson, Brown, Gerbase, Cebull & Jones, P. C., Billings, Mont., on brief, for defendants-appellees.

Before WRIGHT and CANBY, Circuit Judges, and PATEL,* District Judge.

PATEL, District Judge:

Betty Sankovich, the beneficiary of two life insurance policies, appeals from the district court's grant of summary judgment holding two companies not liable on the policies. Although the parties do not dispute the underlying historical facts, we conclude that the ultimate fact—whether the insured committed suicide—presents a triable question for the jury. We reverse and remand.

## I

Kenneth Sankovich, Betty Sankovich's husband, was insured under two life insurance policies issued by the appellees. Kenneth died from a bullet wound to the head. He was found on the floor of his bedroom, a pistol lying about six inches from his body. Betty had purchased the gun six months before Kenneth's death. Betty had seen Kenneth clean and load the gun once before his death.

On the night of Kenneth's death, he came home from work at 5:15 p. m., his usual time. He began to drink and watch television. Betty sat and drank with Kenneth in the kitchen. At about 8:00 p. m. Kenneth and Betty began an argument, the substance of which Betty cannot recall. After 45 minutes of arguing, Kenneth got up and told Betty to get dinner. Kenneth left the kitchen. Betty heard a noise in the bedroom and found Kenneth lying on the bedroom floor.

Betty stated that, except for the shooting, the events that night were not unusual. Throughout their 12-year marriage, Kenneth often drank and argued with Betty. The drinking and arguing often ended with Kenneth beating Betty. During the last three years of the marriage, the drinking and arguing had steadily increased.

Betty called the police to report the shooting. Officer Bodine answered the call. Bodine met Betty in her front yard and Betty stated, "My husband shot himself." Throughout Bodine's investigation Betty repeatedly asked, "Why did he do it?" From his investigation, Bodine made the following determinations: the gun had been fired four to six inches from Kenneth's head; the bullet entered near the right temple and exited above and in front of the left ear; Kenneth had .24 blood alcohol level at the time of death; and the cause of death was a self-inflicted gunshot wound.

At the time of his death, Kenneth had been employed for 8½ years as a purchasing agent. There are no indications of job or financial problems. Moreover, there are no indications of particular family or personal problems other than those mentioned above. Kenneth had not attempted, mentioned, or threatened suicide before his death.

---

* The Honorable Marilyn Hall Patel, United States District Judge for the Northern District of California, sitting by designation.

Betty sued the Life Insurance Company of North America and Credit Life Insurance Company to collect benefits on the life insurance policies that covered Kenneth. The insurers denied liability, contending that Kenneth had committed suicide. It is agreed that the policies exclude liability for suicide. The district court held that suicide was established as a matter of law, and granted the defendants' motions for summary judgment.

## II

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing a grant of summary judgment, we draw all inferences of fact in favor of the party opposing the motion. *Bieghler v. Kleppe*, 633 F.2d 531 (1980).

■ There is no dispute to the basic facts. The dispute is whether those facts establish suicide as a matter of law. The determination here whether death is by accident or suicide is governed by Montana law.[1] *See Equitable Life Assurance Society v. Irelan*, 123 F.2d 462, 464 (9th Cir. 1941). When the question is whether death is due to accident or suicide, Montana provides a rebuttable presumption that death is by accident. *Lewis v. New York Life Insurance Co.*, 113 Mont. 151, 158, 124 P.2d 579, 582 (1942). This presumption has the weight of evidence. Nevertheless, the presumption can be overcome as a matter of law, creating a legal question for the court. *Id.* at 168, 124 P.2d at 584. The question becomes one of law for the court when the evidence points overwhelmingly to suicide as the cause of death. *Nichols v. New York Life Insurance Co.*, 88 Mont. 132, 141, 292 P. 253, 255 (1930).

Two cases have held that sufficient evidence existed to overcome the presumption as a matter of law. In *Nichols v. New York Life Insurance Co.*, 88 Mont. 132, 292 P. 253 (1930), the insured died of strychnine poisoning. The insured told a neighbor that she had taken three capsules and wished she had taken more. She told a neighbor that she had fought with her husband and was mad at him. She also said, "I am through with the world, all through. I am going to take poison and end it all." Finally, just before dying the insured stated, "Please, mother, forgive me, and God forgive me."

*Equitable Life Assurance Society v. Irelan*, 123 F.2d 463 (9th Cir. 1941), also held the evidence there sufficient to overcome the presumption of accidental death. The insured drowned in Puget Sound. A week before her death she had attempted suicide and had left a suicide note. After that attempt the insured told her husband, "I want to die, let me alone." Her footprints traced a path along the banks and into the water. There was no evidence of injury or foul play. The only evidence to negate the inference of suicide was the testimony of one expert that, absent evidence of considerable tidal currents, it would be impossible intentionally to drown oneself in that location.

Both *Nichols* and *Irelan* are distinguishable from the present case. In *Nichols* and *Irelan* the insured expressed an intent to commit suicide, and in *Irelan* the insured had recently attempted suicide. In the present case, however, there is no such evidence of suicidal intent.

In contrast to *Nichols* and *Irelan* are two cases that held that the determination

---

1. In a diversity suit we apply the substantive law of the state. *Neely v. St. Paul Fire & Marine Ins. Co.*, 584 F.2d 341, 345 (9th Cir. 1978). We accord deference to the district judge's interpretations of state law in the state in which the judge sits and reverse such interpretations only if clearly wrong. *Clark v. Musick*, 623 F.2d 89, 91 (9th Cir. 1980).

In contrast, federal law applies in determining whether the evidence is sufficient to raise a question for the jury. *Neely*, 584 F.2d at 345. On review we make a de novo determination of that sufficiency. *See, e. g., Radobenko v. Automated Equipment Co.*, 520 F.2d 540, 543 (9th Cir. 1975).

In this instance we do not think the standard of review is dispositive; whether we use the clearly erroneous test or engage in de novo review, we think the judgment should be reversed.

whether death was accidental or suicide was a fact question for the jury. In *Lewis v. New York Life Insurance Co.*, 113 Mont. 151, 124 P.2d 579 (1942), the insured died of a gunshot wound. On the morning of his death, the insured acted unusually. He woke earlier and ate a different breakfast than usual. The insured's landlady claimed that the insured had not been himself lately and had told her that he questioned his love for his fiancee. The insured was also concerned about his father's ill health. The evidence established, however, that the insured was a young man who had no financial problems and had a promising future in his career. The bullet causing death entered at the insured's forehead. The gun was found on a table, several inches from his hand. A gun cleaning brush and jar of cleaning oil were also on the table. The bullet that caused the death had been the only one in the gun.

The second case in which the issue of suicide was held to present a question for the jury is *Gamer v. New York Life Insurance Co.*, 76 F.2d 543 (9th Cir. 1935), *after remand*, 90 F.2d 817 (9th Cir. 1937), *reversed*, 303 U.S. 161, 58 S.Ct. 500, 82 L.Ed. 726 (1938), *on remand*, 106 F.2d 375 (9th Cir.), *cert. denied*, 308 U.S. 621, 60 S.Ct. 294, 84 L.Ed. 518 (1939). The insured in *Gamer* died of a gunshot wound to the mouth. Before his death, the insured voiced an intent to go fishing that day, and was dressed for hunting, as was his custom. About one-half hour later, he was found lying in the bedroom, with his legs extended into the closet where his gun was kept. Clothing and other items in the closet made it difficult to maneuver in the closet. Thus, the court held that it could be inferred that the insured accidentally shot himself while trying to remove the gun from the closet.

*Lewis* and *Gamer* are also both distinguishable from the present case. In both cases there was a benign explanation for the insured's handling of the gun. In *Lewis* the insured could have been cleaning his gun; in *Gamer* the insured could have been preparing for a hunting trip. In the present case there is no such benign explanation for the insured's handling of the gun.

■ Although *Nichols, Irelan, Lewis,* and *Gamer* deal with the question raised here—what quantum of evidence makes the issue of suicide a question of law for the judge—the facts of this case place it squarely between the two lines of precedent. Kenneth Sankovich did not make statements or take prior actions indicating his intent to commit suicide as in *Nichols* and *Irelan*; but there is also no benign explanation for handling the gun as in *Lewis* and *Gamer*.[2]

### III

We conclude that the proper approach here is to allow the jury as factfinder to decide whether Kenneth Sankovich intentionally killed himself. Where, as here, intent is an issue, we are very wary of allowing summary judgment. *E. g., Hotel & Restaurant Employees v. Rollison*, 615 F.2d 788, 793 (9th Cir. 1980).

■ Although the factfinder would certainly be entitled to infer that the facts as presented in the motions and accompanying documents establish intentional self-destruction, we cannot say on the record before us that the factfinder could not reason-

---

**2.** The insurance companies made two other arguments to support their summary judgment motions, neither of which the district court relied upon. Both arguments lack merit.

First, the insurance companies argue that the Montana presumption of accidental death should be canceled out by the Montana presumption that one intends the ordinary consequences of his own voluntary act. That second presumption is inapplicable here because the basic question is whether the shot was a voluntary act by the insured. Thus, because the basic fact, the voluntary act, has not been proven, the presumption never comes into being.

The insurance companies also argue that the policy exclusion applies even if it is proved that the insured was insane when he took his own life. Although this construction is in accord with the bulk of authority, *see* 9 A.L.R.3d 1015, 1018 (1966), it is an unnecessary argument here. Betty Sankovich concedes that her husband, the insured, was sane when he died.

ably have reached the opposite conclusion.[3] Where there are undisputed facts from which different ultimate inferences might reasonably be drawn and as to which reasonable persons might differ, the case is not suitable for summary judgment. *See, e. g., United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *United States v. Perry*, 431 F.2d 1020, 1022 (9th Cir. 1970).

Kenneth Sankovich's self-inflicted death arguably was inconsistent with his prior behavior. The jury as factfinder is the proper body to determine whether that self-inflicted death was intentional or accidental. Accordingly, we reverse the summary judgment and remand the case to the district court for further proceedings.

REVERSED and REMANDED.

---

**3.** Even uncontradicted testimony is not sufficient to overcome the rebuttable presumption "where the inferences to be drawn from the facts and circumstances are open to different conclusions by reasonable men." *Equitable Life Assurance Society v. Irelan*, 123 F.2d 462, 464 (9th Cir. 1941).