**BANK OF CALIFORNIA, N. A., Plaintiff/Appellee,**

v.

**W. H. OPIE, et al., Defendants,**

**California Union Insurance Company, Defendant/Appellant.**

**No. 80–3157.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 10, 1981.

Decided Dec. 14, 1981.

BOOCHEVER, Circuit Judge:

This case concerns the liability of an errors-and-omission insurer of a mortgage banking corporation for losses due to the corporation's failure to apply properly the proceeds of loans secured for its normal business purposes from a commercial bank.

W.H. Opie & Company (Opie) borrowed money from the Bank of California (Bank) for operating expenses in connection with its mortgage-banking business, but violated the loan agreement as to the proper application of the funds. Opie was found liable for damages in state court, and the Bank commenced the present garnishment action against California Union Insurance Company (Union), Opie's errors-and-omissions insurance carrier. The action was removed to federal court on diversity. The district court granted summary judgment in favor of the Bank, holding that, under Washington law, Opie's liability to the Bank arose "by reason of [an] act, error or omission in professional services" within the meaning of Union's policy. Because we agree with the district court that Union's policy covered Opie's conduct and that summary judgment was appropriate, we affirm.

## I.

### Facts

Opie entered into a series of financial transactions with the Bank to secure financing for its mortgage-banking business. The Bank provided "lines of credit" for Opie to draw upon to finance construction projects in the Tacoma, Washington area. In return, Opie assigned to the Bank as security the trust deeds, notes and mortgages covering the properties Opie financed with the loan proceeds.

Pursuant to the loan agreements, Opie was obligated to maintain the assigned interests as the first liens against the proper-

Edward S. Winskill, Davies, Pearson, Anderson, Seinfeld, Gadbow, Hayes & Johnson, P. S., Tacoma, Wash., for defendant/appellant.

Stephen P. Ryder, Thom, Navoni, Hoff, Pierson & Ryder, Seattle, Wash., for plaintiff/appellee.

Before PREGERSON and BOOCHEVER, Circuit Judges and KELLAM,* District Judge.

* Richard B. Kellam, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

ties. To accomplish this, Opie was required to use the loan proceeds to discharge the construction liens and other encumbrances on the properties covered by the instruments assigned as collateral.

In violation of its agreement with the Bank, Opie used the proceeds of certain loans received in 1971 for unspecified business purposes, and failed to discharge the construction liens and encumbrances on four of the properties secured by assignments to the Bank. Opie's failure to apply properly the loan proceeds to discharge the underlying construction debts eventually resulted in the Bank's security being impaired.

The Bank sued Opie in state court in 1975, alleging that Opie's misapplication of the loan proceeds constituted breach of contract and fraud.[1] The jury found for the Bank and awarded damages, that, together with prejudgment interest, resulted in a total award of $28,004.47.

Opie apparently proved unable to pay the judgment, so the Bank filed a writ of garnishment against Union in state court, alleging that the professional liability policy issued to Opie by Union covered the conduct that gave rise to the state court judgment. Union's errors-and-omissions policy covered Opie for "any act, error or omission in professional services ... in the conduct of the insured's business as: ... mortgage banker, mortgage correspondent, [and] mortgage broker...."

After removal to the district court, the Bank moved for summary judgment based upon a pretrial stipulation, that included as exhibits the jury instructions and judgment from the state court action and a copy of Union's insurance policy. In opposition to the Bank's motion, Union filed two affidavits of its counsel, the first of which incorporated lengthy portions of the transcript from the underlying action.

The district court held that Union's policy covered Opie's conduct and granted summary judgment in favor of the Bank in the amount of the underlying state court judgment. The sole issue presented by Union's appeal is whether Opie's liability to the Bank for the misapplication of loan proceeds arose "by reason of any act, error or omission in professional services" within the meaning of Union's policy.

## II.

### Summary Judgment

Although this is a diversity case, federal law alone governs whether evidence is sufficient to raise a question for the trier-of-fact. *Sankovich v. Life Insurance Co. of North America*, 638 F.2d 136, 138 n.1 (9th Cir. 1981); *Neely v. St. Paul Fire and Marine Insurance Co.*, 584 F.2d 341, 345 (9th Cir. 1978). Under Fed.R.Civ.P. 56(c), summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Heiniger v. City of Phoenix*, 625 F.2d 842, 843 (9th Cir. 1980). This court reviews *de novo* decisions granting summary judgment. *State ex rel. Edwards v. Heimann*, 633 F.2d 886, 888 n.1 (9th Cir. 1980); *Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 759 (9th Cir. 1980). Moreover, regardless of the procedural posture of the case on appeal, construction of a contractual provision is ordinarily a question of law subject to *de novo* review. *Waggoner v. Northwest Excavating, Inc.*, 642 F.2d 333, 337 (9th Cir. 1981); *Transport Indemnity Co. v. Liberty Mutual Insurance Co.*, 620 F.2d 1368, 1370 (9th Cir. 1980). *Accord, United Pacific Insurance Co. v. McCarthy*, 15 Wash.App. 70, 546 P.2d 1226, 1228 (1976); *State Farm Mutual Automobile Ins. Co. v. Phillips*, 2 Wash.App. 169, 467 P.2d 189, 193 (1970).

Because the parties failed to address the question of summary judgment in their briefs, we directed them to do so at oral argument. Counsel for both parties acknowledged at oral argument that the underlying facts are uncontroverted, that the

---

1. Because Opie's counsel was appointed by Union, the case does not involve the analytically

distinct issue of Union's duty to defend Opie. *See* note 4 *supra*.

evidence offered in regard to the motion for summary judgment affords an adequate basis for resolving the case,[2] and argued that their respective clients were entitled to judgment as a matter of law.[3]

### III.

### Opie's Professional Services

The substantive issue on appeal is a narrow one; namely, whether Opie was performing "professional services" within the meaning of the policy when it breached its loan agreement with the Bank. Union implicitly concedes that Opie's liability arose out of an "error or omission," and that the policy exclusion for "dishonest, fraudulent, criminal or malicious" acts is inapplicable. Union further concedes that a breach of contract can, under the proper circumstances, constitute an error or omission of professional service.[4]

The parties agree that Union's policy should be construed, to the extent possible, under Washington law. *See, e. g., First Insurance Co. of Hawaii v. Continental Casualty Co.,* 466 F.2d 807, 809 (9th Cir. 1972); *Larson Construction Co. v. Oregon Automobile Ins. Co.,* 450 F.2d 1193, 1195 (9th Cir. 1970). The basic rules for construing insurance policies under Washington law are typical of the rules found in most states: policy language should be interpreted according to its ordinary meaning, *Dairyland Insurance Co. v. Ward,* 83 Wash.2d 353, 517

P.2d 966, 968–69 (1974); *Frontier Lanes v. Canadian Indemnity Co.,* 26 Wash.App. 342, 613 P.2d 166, 168 (1980); in construing key clauses and words, the court must attempt to ascertain what was probably contemplated by the parties when the contract was written, *Harris v. Fireman's Fund Indemnity Co.,* 42 Wash.2d 655, 257 P.2d 221, 226 (1953); and ambiguities in the policy must be construed in favor of the insured, *Witherspoon v. St. Paul Fire & Marine Ins. Co.,* 86 Wash.2d 641, 548 P.2d 302, 308 (1976); *McDonald Industries, Inc. v. Rollins Leasing Corp.,* 26 Wash.App. 376, 613 P.2d 800, 802–03 (1980).

■ This court normally accords deference to a district court's interpretation of the substantive state law in the state in which the court sits, and reverses such interpretations only if "clearly wrong." *Power v. Union Pacific Railroad Co.,* 655 F.2d 1380 at 1382 (9th Cir. 1981); *Clark v. Musick,* 623 F.2d 89, 91 (9th Cir. 1980). Although we agree with the district court's decision, we note that its interpretation of Washington law is entitled to little or no special deference in this case. As noted later, *infra* at n. 5, Washington authority offers little more than general guidance in this case and was not expressly relied upon by the district court.

The few decisions anywhere that construe the term "professional services" offer little

---

**2.** In concluding that summary judgment was appropriate in this case, we emphasize that the evidence submitted by the parties in regard to the Bank's motion for summary judgment was nearly identical to the evidence the parties agreed, in their pretrial stipulation, to introduce at trial. In both instances, the evidence consisted almost entirely of documentary material from the underlying state court action.

**3.** Although neither party discussed our recent decision in *Sankovich v. Life Insurance Co. of North America,* 638 F.2d 136 (1981), we note that it is distinguishable from the present case on the issue of summary judgment. In *Sankovich,* the parties vigorously disputed whether the underlying facts established as a matter of law that suicide was the cause of death for purposes of qualifying for insurance death benefits. In remanding for the jury to determine

whether Sankovich intentionally killed himself, we emphasized that, "[w]here, as here, intent is an issue, we are wary of allowing summary judgment." *Id.* at 139.

**4.** Although there is authority for the proposition that liability based upon contract rather than tort does not fall within the coverage of professional-liability insurance (*see* 44 Am. Jur.2d, *Insurance* § 1429, at 289, and cases cited therein), the district court found to the contrary, a position supported by Washington law. *See Sutherland v. Fidelity & Casualty Co.,* 103 Wash. 583, 175 P. 187 (1918); *Transcontinental Insurance Co. v. Faler,* 9 Wash. App. 610, 513 P.2d 864 (1973). *Accord, Squires v. Hayes,* 13 Mich.App. 449, 164 N.W.2d 565 (1968); *Cadwallader v. New Amsterdam Casualty Co.,* 396 Pa. 582, 152 A.2d 484 (1959).

more than general guidance.[5] The definition of "professional service" most commonly employed stems from *Marx v. Hartford Accident and Indemnity Co.*, 183 Neb. 12, 13–14, 157 N.W.2d 870, 871–72 (1968), where the Nebraska Supreme Court defined the term as:

> Something more than an act flowing from mere employment or vocation is essential. The act or service must be such as exacts the use or application of special learning or attainments of some kind. The term "professional" in the context used in the policy provision means something more than mere proficiency in the performance of a task and implies intellectual skill as contrasted with that used in an occupation for production or sale of commodities. A "professional" act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual [citations omitted]. In determining whether a particular act is of a professional nature or a "professional service" we must look not to the title or character of the party performing the act, but to the act itself.

The definition has been cited with approval in *American Fellowship Mutual v. Insurance Co.*, 90 Mich.App. 633, 282 N.W.2d 425, 427 (1979); *Horn v. Burns and Roe*, 536 F.2d 251, 255 (8th Cir. 1976); *Multnomah County v. Oregon Automobile Ins. Co.*, 256 Or. 24, 470 P.2d 147, 149 (1970); 44 Am. Jur.2d, *Insurance* § 1430, at 290.

■ A professional obviously performs many tasks that do not constitute professional services. As emphasized in the above-quoted definition, to be considered a professional service, the conduct must arise out of the insured's performance of his specialized vocation or profession. To take an extreme example, an attorney's failure to pay for office equipment constitutes a breach of contract, not an omission in professional services, regardless of how essential the equipment may be to the attorney's law practice. To be covered, the liability must arise out of the special risks inherent in the practice of the profession. *See generally*, 7A Appleman, *Insurance* § 4502, at 299–300; § 4503, at 304–07; and § 4504.01, at 309–11; Annot. *Professional Liability*, 35 A.L.R.2d 452.

Union rests its case on the contention that a professional-service relationship did not exist between Opie and the Bank. Union argues that merely because Opie was dependent upon ongoing financing to engage in its profession as a mortage banker does not transform what was essentially a creditor-debtor relationship with the Bank into a professional-service relationship. We find this argument unpersuasive.

---

5. Although the Washington courts and this court have considered whether specified conduct by the insured constituted "professional services" for purposes of coverage under professional-liability policies, the decisions are inapposite for one of two reasons. First, most of the decisions involve an insurer's duty to defend, not the duty to pay claims. *See, e. g., Previews, Inc. v. California Union Ins. Co.*, 640 F.2d 1026, 1027–28 (9th Cir. 1981) (involving the same insurer and roughly the same policy at issue in the present case, construed under California law); *Transcontinental Insurance Co. v. Faler*, 9 Wash.App. 610, 513 P.2d 864, 866–67 (1973) (declaratory judgment for insurer reversed). *See also Cadwallader v. New Amsterdam Casualty Co., Inc.*, 396 Pa. 582, 152 A.2d 484 (1959) (a case heavily relied on by the Bank). It is well settled that an insurer's duty to defend against suit under a professional-liability policy is substantially broader than the duty to pay claims. *See Previews, Inc.*, 640 F.2d at 1027; *Jefferson-Pilot Fire v. Boothe, Prichard & Dudley*, 638 F.2d 670, 674 (4th Cir. 1980).

Second, the few decisions that involve the duty to pay claims, rather than the duty to defend, involve fact situations so dissimilar from the present case and contain such cursory analysis of the coverage issue, that they merit no further attention. *See First Insurance Co. v. Continental Casualty Co.*, 466 F.2d 807 (1972) (faulty plan responsible for soil slippage held part of insured engineer's professional services); *United States Fidelity and Guaranty Co. v. Dohner*, 71 Wash.2d 544, 429 P.2d 883, 884 (1967) (insured hairdresser was performing professional "tonsorial" services when customer sustained injuries while chair was being reclined for a shampoo); *Sutherland v. Fidelity and Casualty Co.*, 103 Wash. 583, 175 P. 187 (1918) (physician contracted to cure patient).

Contrary to Union's contention, the policy it drafted does not require, as a condition of coverage, a professional-service relationship to exist between the insured and the party harmed by the insured's act or omission. The policy plainly makes coverage dependent upon the nature of the insured's conduct, not the status of the party harmed. As emphasized by the Nebraska court in *Marx v. Hartford, supra,* courts must look "to the act itself" to determine whether the insured's liability was predicated upon the faulty rendition of professional services. 157 N.W.2d at 871–72.

■ The conduct presently at issue is Opie's failure to apply properly some of the funds loaned by the Bank. Thus, the controlling inquiry is whether management of the loan proceeds comes under the policy coverage for Opie's professional services. In addressing this issue we are mindful that inclusionary clauses in insurance contracts are liberally construed in Washington in favor of covering all acts fairly embraced by the specified terms. *Hawaiian Insurance and Guaranty Co., Ltd. v. Federated American Insurance Co.,* 13 Wash.App. 7, 534 P.2d 48 (1975).

■ On the undisputed facts of this case, the responsibility to manage the loan proceeds was clearly part of Opie's usual day-to-day business operations, and, therefore, was a "professional service" within the meaning of the policy. Union's policy expressly extends coverage to losses arising out of Opie's professional services as a mortgage banker, correspondent and broker. The terms mortgage correspondent and mortgage broker merely describe specific aspects of the business commonly known as mortgage banking.[6]

The record indicates that Opie acted as a financial middleman in a series of real estate transactions, and that its professional services consisted largely of channeling funds between three groups: lending institutions like the Bank; real estate developers and purchasers; and, eventually, permanent investors.[7] Given the nature of the business, "the ability to secure sufficient financing is one of the most important requirements of a mortgage loan business." *Mortgage Banking, supra* n. 6, at 395. In this case, the Bank provided lines of credit for Opie to draw upon in the ordinary course of Opie's business. Without the ability to secure such credit, Opie would have been unable to finance real-estate developers and purchasers. Without the ability to finance developers and purchasers, Opie would have been unable to generate mortgages to sell to permanent investors, the final step in mortgage banking.

Thus, not only were Opie's activities as a mortgage banker, broker and correspondent dependent upon proper management of credit, but, in addition, these activities largely consisted of management of credit. Opie's liability for the mismanagement of loan proceeds clearly arose out of Opie's performance of its vocation as a mortgage banker, and, equally clearly, was one of the special risks inherent in the practice of that profession. To conclude otherwise would ignore the nature of the mortgage-banking business, the plain meaning of the policy, and the reasonable expectations of the insured. Viewing the evidence in the light most favorable to Union, the party against whom summary judgment was granted, we

---

**6.** The relationship between a mortgage banker and its permanent investors is known as a "principal-correspondent" relation. Pease and Cherrington, *Mortgage Banking,* at 297, 302 (McGraw Hill 1953).

The function of a mortgage broker "is to arrange a loan for a borrower to be secured by a trust deed or other lien on the borrower's real property." *Tushner v. Savage,* 33 Cal.Rptr. 247, 219 Cal.App.2d 71 (1963). *See also Knudson v. Weeks,* 394 F.Supp. 963, 975 (1975). A typical component of most mortgage banking businesses is a real-estate brokerage division to

market the homes developed by the business and to generate mortgages from outside sources. *See generally, Mortgage Banking, supra* at 396–97.

**7.** Indeed, a mortgage banker has been defined as "a manager of real estate credit." *Mortgage Banking, supra* n. 5, at 1. Moreover, "[w]hile [a mortgage banker's] primary function is that of extending credit on real estate, the very completion of this function creates new duties and responsibilities ...." *Id.*

conclude that the district court correctly found that the Bank was entitled to judgment as a matter of law.

AFFIRMED.