Deanna BIGONI, Plaintiff,

v.

PAY 'N PAK STORES, INC., a foreign corporation; and Roger Hatch, Defendants.

Civ. No. 88–1162–FR.

United States District Court, D. Oregon.

June 21, 1990.

Charles J. Merten, Merten & Associates, Portland, Or., for plaintiff.

E. Sean Donahue, Carol J. Bernick, Davis Wright Tremaine, Portland, Or., Michael Reiss, Davis Wright Tremaine, Seattle, Wash., for defendant Pay 'N Pak Stores, Inc.

Steven N. Bogdon, Marsh, Higgins & Foster, Vancouver, Wash., for defendant Roger Hatch.

## OPINION

FRYE, District Judge:

The matters before the court are the motions for summary judgment filed by defendants, Pay 'N Pak Stores, Inc. (Pay 'N Pak) (# 67) and Roger Hatch (# 70). Pay 'N Pak is incorporated in the State of Washington, but operates retail home improvement centers in fourteen western states, including the State of Oregon.

## UNDISPUTED FACTS

In June, 1984, Pay 'N Pak hired plaintiff, Deanna Bigoni, to work in a store in Anchorage, Alaska. In February, 1985, Bigoni was transferred to the Pay 'N Pak store in Portland, Oregon. In October, 1985, Bigoni was transferred to a new Pay 'N Pak store in Milwaukie, Oregon. Defendant Roger Hatch was the manager of the Pay 'N Pak store in Milwaukie, Oregon. Bigoni worked under the management of Hatch until June 4, 1986.

On June 3, 1986, Bigoni gave a statement to Bud Brown, the District Manager of Pay 'N Pak, in which she described numerous incidents of inappropriate behavior, including sexual comments by Hatch and Sam Ross, Bigoni's immediate supervisor. Bud Brown reviewed the statement with Hatch. On June 3, 1986, Bud Brown wrote a memorandum in which he stated that there was "some truth" in Bigoni's statement and notified Hatch that the inappropriate and unprofessional behavior "must be corrected now" and "if this doesn't happen it could be cause for termination." Exhibit D to Plaintiff's Response to Defendants' Motion for Summary Judgment.

Bud Brown wrote a memorandum on June 20, 1986, in which he noted, in part, that "Roger [Hatch] and I agreed that [the behavior was] inappropriate and unprofessional and that [it] would never happen

again." Exhibit G. Meetings were held with all store employees at which Hatch apologized for his behavior and stated that it would never happen again.[1]

On May 28, 1988, Bigoni filed a claim for wrongful termination of her employment in the Circuit Court of the State of Oregon for the County of Multnomah alleging that Pay 'N Pak fired her for complaining about and resisting sexual harrassment. Pay 'N Pak denied the allegations in Bigoni's complaint and affirmatively alleged that Bigoni left her employment with Pay 'N Pak because she was unable or unwilling to work weekends as all sales personnel were required to do. Pay 'N Pak has removed that action to this court where it is now pending.

Shortly after Bigoni filed her action for wrongful termination, she moved to the State of California. In mid–August, 1988, Bigoni moved back to the City of Portland. Within a few days of her return to the City of Portland, Bigoni and Merja Treadwell, a close friend and former co-worker of Bigoni at Pay 'N Pak, started to receive harrassing telephone calls. Sam Ross knew that Bigoni was returning from the State of California. Hatch had access to Bigoni's unlisted telephone number.

Some of the telephone calls that Treadwell received involved threats upon Bigoni's life and threats of rape. One of the callers said to the effect "Your hearing is bad now, just wait until after you testify," and specifically referred to Bigoni's testimony against Pay 'N Pak. Treadwell testified in her deposition:

I don't know the date exactly, but someone called up and said that they used to work for Pay 'N Pak, please listen, I'm not going to harrass you, sort of, you know, to keep me on the line because I was at that point saying, hey, I'm hanging up. And he said that they used to work for Pay 'N Pak, they had something for Deanna and Deanna didn't like them, or I don't know, but that they had gotten out of hand, him and a friend

1. Hatch has a problem with alcohol and has admitted to numerous inappropriate sexual comments and behavior.

of his had gotten out of hand, they did not mean to scare us, they did not mean for it to go this far, it had gone too far, they realized, they got together and just drank too much and started these phone calls and they're sorry, they'd never happen again.

Exhibit J, Deposition of Merja Treadwell, p. 118.

During this same period, an unidentified male had followed Bigoni. Bigoni did not and does not know the identity of the person who followed her, and Bigoni also has no information as to the identity of the person who threatened her or Treadwell on the telephone. During the time that Bigoni worked for Roger Hatch, he stated to the effect that if she ever presented some sort of danger to him or his job, he would get her in some way.

In August, 1988, Bigoni filed this action against Pay 'N Pak and Hatch alleging the intentional infliction of emotional distress based upon the threats she received.

On September 17, 1988, management of Pay 'N Pak sent Hatch a memo reminding Hatch that his prior inappropriate behavior was strictly prohibited and punishable by discharge and warning him that "any conduct on your part which is threatening in nature and is purported by you to be on behalf of Pay 'N Pak is strictly prohibited and will result in discharge." Exhibit F.

Shortly after this action was filed, the threatening telephone calls to Bigoni stopped.

## CONTENTIONS OF THE PARTIES

Pay 'N Pak contends that it is entitled to summary judgment because there is no evidence that Pay 'N Pak committed any of the alleged conduct; no evidence that Pay 'N Pak is or was directly or indirectly responsible for any of the alleged conduct; and no evidence to support a verdict against Pay 'N Pak and in favor of Bigoni on a theory of direct or vicarious liability.

Hatch argues that he is entitled to summary judgment on the grounds that Bigoni admits that Hatch did not commit any of the specific threatening acts and that there

is no evidence that he participated in these acts in any way.

Bigoni asserts that there is direct evidence of a connection between the employees of Pay 'N Pak and the harrassing telephone calls she received because the caller referred specifically to testifying against Pay 'N Pak. Bigoni contends that these are facts from which a jury could conclude that Hatch had the motive and opportunity to intimidate her and discourage her from pursuing the litigation in the first case she filed.

## APPLICABLE STANDARD

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The burden to establish the absence of a material issue of fact for trial is on the moving party. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

Assuming there has been adequate time for discovery, summary judgment should then be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When different ultimate inferences can be reached, summa-

ry judgment is not appropriate. *Sanko-vich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir.1981). Finally, summary judgment is inappropriate where credibility is at issue. Credibility issues are appropriately resolved only after an evidentiary hearing or full trial. *SEC v. Koracorp Indus.*, 575 F.2d 692, 699 (9th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978).

## ANALYSIS AND RULING

■ Hatch has a history of inappropriate and unprofessional behavior at Pay 'N Pak which was brought to light by Bigoni. A trier of fact could conclude that Hatch's job was threatened because he publicly apologized to the employees at his store and was told by his superiors that his behavior could be grounds for termination.

Bigoni did not file her first lawsuit until May of 1988, and then she went to the State of California. Hatch had a reason to be threatened by Bigoni's lawsuit. The threats began again after she returned to the State of Oregon. The court concludes that there is circumstantial evidence to support Bigoni's assertion that the intimidating acts that she and Treadwell experienced were related to her lawsuit against Pay 'N Pak.

While the evidence is predominantly circumstantial, it is for a jury to decide whether the evidence Bigoni is able to produce proves her case by a preponderance of the evidence. Whether Hatch's assertion that he was in no way involved is an issue that must be resolved by a jury.

■ Pay 'N Pak is not liable for the alleged intentional torts of Hatch unless Bigoni can show that Hatch's acts were committed within the course and scope of his employment. There are instances when criminal or tortious acts may be deemed within the course and scope of employment. Restatement of Agency, Second, § 231, explains in the comments:

The fact that the servant intends a crime, especially if the crime is of some magnitude, is considered in determining whether or not the act is within the employment, since the master is not respon-sible for acts which are clearly inappropriate to or unforeseeable in the accomplishment of the authorized result. The master can reasonably anticipate that servants may commit minor crimes in the prosecution of the business, but serious crimes are not only unexpectable but in general are in nature different from what servants in a lawful occupation are expected to do.

A chauffeur, driving on an errand for his master, who knowingly drives on the left-hand side of the street or exceeds the speed limit, is still acting within the scope of employment. Likewise, a gardener using a small stick in an assault upon a trespassing child to exclude him from the premises may be found to be acting within the scope of the employment; if, however, the gardener were to shoot the child for the same purpose, it would be difficult to find the act within the scope of employment. So, if a servant is directed to use any lawful means to overcome competition, the bribery of employees of the competitor, or the circulation of malicious stories, might be found to be within the scope of employment, while the murder of the competitor, although actuated solely by zeal for the master, would not be.

1 Restatement of Agency 2d, § 230, pp. 512–13.

In *Barry v. Oregon Trunk Railway*, 197 Or. 246, 253 P.2d 260 (1953), the court found that a railroad trackwalker was not acting within the scope of his employment when he struck a rancher with a shovel. The court quoted 35 Am. Jur., Master and Servant, 992, § 558, as follows:

Ultimately, the question to be determined is whether the wrongdoer was engaged in performing a service which was a contemplated or foreseeable incident of his employment. If it is to be concluded that the defendant employer ought to have foreseen or anticipated that the employee would act in the manner in which he is shown to have acted, a recovery is sustainable. If, on the other hand, it is to be concluded that the defendant could not have foreseen and prevented the inju-

rious occurrence, the plaintiff is not entitled to recover.

197 Or. at 262, 253 P.2d 260.

The *Barry* court concluded that the railroad trackwalker had lost his temper, and out of a spirit of personal animosity, struck the rancher with the shovel. The court found that the act had nothing whatsoever to do with the master's business, and that the trackwalker was "serving a purpose solely his own." 197 Or. at 264, 253 P.2d 260.

 Ordinarily, it is a question of fact for the jury to determine whether a wrongful act committed by a servant is within the real or implied scope of his authority. Where, however, the facts are not in dispute and the evidence is susceptible of but one conclusion, the question is one of law for determination by the court. 197 Or. at 255, 253 P.2d 260. In deciding Pay 'N Pak's motion for summary judgment, the court assumes that Hatch was directly or indirectly involved in the threats allegedly made to Bigoni. The court must then determine whether the threats alleged could have been contemplated or foreseen by Pay 'N Pak as an incident of Hatch's employment.

Bigoni asserts that it was foreseeable to Pay 'N Pak that Hatch would harrass her because 1) he had admitted acting inappropriately and unprofessionally toward her in the past; and 2) Pay 'N Pak wrote Hatch a warning to let him know that he would be terminated if he threatened Bigoni or Treadwell.

The warning written to Hatch by Pay 'N Pak was written on September 17, 1988, after this action was filed by Bigoni, and cannot be used to prove that the actions of Hatch were foreseeable by Pay 'N Pak. The fact that Hatch acted inappropriately toward Bigoni in 1986 does not raise an inference that Pay 'N Pak could have foreseen that Hatch would threaten Bigoni in an attempt to coerce her to withdraw the first lawsuit. If Hatch had anything to do with the intimidation of Bigoni, it was solely for his own perverse delight and benefit and had nothing whatsoever to do with the business of Pay 'N Pak. The court concludes that the trier of fact could not reasonably conclude that the intimidation of Bigoni by Hatch was foreseeable by Pay 'N Pak.

### CONCLUSION

Hatch's motion for summary judgment (# 70) is denied. Pay 'N Pak's motion for summary judgment (# 67) is granted.