214 F.Supp.2d 1074 (2002)
HORIZON WEST INC; Auburn Manor Inc; Parkview Nursing Center, Doing business as Auburn Manor Inc; Heritage Convalescent Hospital; Empress Convalescent Hospital; Emerald Distributing Company Inc; Far West Inc; Linwood Gardens Convalescent Hospital, Inc.; Medicrest of California Inc; Medical Center Convalescent Hospital; Medicrest of California Inc; Medicrest of California Inc, Doing business as Arlington Gardens Convalescent Hospital, Doing business as Montclair Manor Convalescent Hospital; Mid-Wilshire Convalescent Hospital Inc; Sacramento Convalescent Hospital Inc, Doing business as McKinley Health Care Center; South Gate Care Center Inc, Doing business as Casa Del Rey Care; Vallejo Convalescent Hospital Inc, Doing business as Sereno Care Center; Westgate Gardens Convalescent Center Inc; Whitehall Convalescent Hospital Inc; Wellesley Manor Convalescent Hospital, Doing business as Whitehall Convalescent Hospital Inc; Monterey Bay Convalescent Hospital Inc;  Sierra Health Care Convalescent Hospital; Sierra Medical Enterprises Inc; Holiday Hill Convalescent Hospital Inc, Doing business as Grass Valley Convalescent Hospital; El Dorado Convalescent Hospital Inc; Foothills Oaks Care Inc; Hilltop Manor Convalescent Hospital Inc; Lakeport Skilled Nursing Center Inc; Lincoln Manor Inc; *1075 Live Oak Manor Inc; Meadow View Manor Inc; Monterey Pines Skilled Nursing Facility Inc; Napa Nursing Center Inc; Placerville Pines Convalescent Hospital Inc; Roseville Convalescent Hospital Inc; Sierra Hills Care Center Inc; Sunny Hills Convalescent Hospital Inc; Valley View Skilled Nursing Facility Inc; Walnut Whitney Convalescent Hospital Inc; Sierra Solano Care Center Inc; Westcare Management Inc, a Utah Corporation; Four Corners Regional Care Center Inc; Parkdale Care Center Inc; Red Cliffs Regional Inc, a Utah Corporation; Sandy Regional Convalescent and Rehabilitation Center; Horizon West Inc, plaintiff.
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, defendant.
No. CIV-S-00-678 DFL/GGH.
United States District Court, E.D. California.
April 9, 2002.
Craig Edward Farmer, Farmer Murphy Smith and Alliston, Sacramento, CA, Susan G Koontz, Law Offices of Susan G Koontz, Rocklin, CA, for plaintiffs.
Norman C Hile, Orrick Herrington and Sutcliffe, LLP, Sacramento, CA, Craig Edward Farmer, Farmer Murphy Smith and Alliston, Sacramento, CA, Susan G Koontz, Law Offices of Susan G Koontz, Rocklin, CA, for Horizon West Inc, plaintiff.
Clark J Burnham, Burnham and Brown, Oakland, CA, for St Paul Fire and Marine Insurance Company, defendant.

MEMORANDUM OF OPINION AND ORDER
LEVI, District Judge.
Several retirement homes (collectively "Horizon West") sued St. Paul Fire and Marine Insurance Co. ("St.Paul") for failing to defend Horizon West in a suit brought under the False Claims Act ("FCA"). St. Paul moves to dismiss the suit.

*1076 I.
The facts of this case are largely undisputed. On April 4, 1997, Relators Foundation Aiding the Elderly and Marsha Baker (collectively "relators") filed a qui tam suit against Horizon West, alleging that Horizon West violated the FCA by submitting Medicare and Medicaid claims for services that were not provided, and by falsifying records to conceal substandard conditions at the nursing homes. At the time suit was filed, Horizon West held various insurance policies with St. Paul that indemnified Horizon West for liability incurred in its provision of professional services. On December 23, 1998, Horizon West tendered defense of the FCA suit to St. Paul. St. Paul declined to defend the case on February 3, 1999, contending that the suit was based on conduct not covered by Horizon West's insurance policies.
Judge Karlton granted Horizon West's motion to dismiss the FCA suit on August 20, 1999. Relators' appeal of the dismissal is currently pending before the Ninth Circuit. On March 28, 2000, Horizon West filed a breach of contract suit against St. Paul for its refusal to defend Horizon West in the FCA suit. St. Paul moves to dismiss the suit, contending that it has no duty to defend Horizon West as a matter of law.

II.

1. Duty to defend
"Under California law, `the duty to defend is so broad that as long as the complaint contains language creating the potential of liability under an insurance policy, the insurer must defend an action against its insured.'" Zurich Ins. Co. v. Killer Music Inc., 998 F.2d 674, 678 (9th Cir.1993) (quoting CNA Casualty of California v. Seaboard Sur. Co., 176 Cal. App.3d 598, 606, 222 Cal.Rptr. 276, 279 (1986)). "To prevail, the insured ... need only show that the underlying claim may fall within policy coverage...." Montrose Chemical Corp. v. Superior Court, 6 Cal.4th 287, 300, 24 Cal.Rptr.2d 467, 475, 861 P.2d 1153 (1993). "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." Horace Mann Ins. Co. v. Barbara B., 4 Cal.4th 1076, 1081, 17 Cal. Rptr.2d 210, 214, 846 P.2d 792 (1993).

2. Scope of the insurance policy
Under the language of the Facility Coverage form, St. Paul has a duty to defend Horizon West in suits arising from three types of conduct:
Professional liability coverage. We'll pay amounts you and others protected under this agreement are legally required to pay to compensate others for injury or death resulting from any of the following:
 the providing or failure to provide professional services while this agreement is in effect;
 the actions of any formal accreditation board of yours or any similar board of yours while this agreement is in effect;
 the actions of those charged with carrying out such board or committee directives while this agreement is in effect.
(Compl., Exh. A.) The policy requires St. Paul to "defend any lawsuit brought against [Horizon West] or any other protected person for covered claims, even if the suit is groundless or fraudulent." Id. Horizon West argues that St. Paul has a duty to defend it in the FCA suit because the suit is premised on two professional services conducted by Horizon West: (1) its provision of medical services to the residents of its nursing homes, and (2) its *1077 submission of Medicare and Medicaid claims. (See Opp. at 15.)

3. Qui Tam suit
The False Claims Act ("FCA") imposes civil monetary penalties for the submission of false claims to the government. To state a claim under the FCA, relators must allege that defendant submitted a claim for payment from the government, that the claim was false or fraudulent, and that the defendant knew the claim was false or fraudulent. See 31 U.S.C. § 3729(a).[1] The injury suffered by the United States under the FCA is "the difference between what the government actually paid and the amount it would have paid in the absence of the fraudulent claim." United States ex rel. Woodard v. Country View Care Center, Inc., 797 F.2d 888, 893 (10th Cir.1986).
Liability under the FCA is based solely upon the creation or presentation of false claims to the government, not upon the underlying conduct used to establish the falsity of such a claim. See 31 U.S.C. § 3729(a); U.S. ex rel. Hopper v. Anton, 91 F.3d 1261, 1266 (9th Cir.1996). This important distinction was recently discussed by the Sixth Circuit in M/G Transport Services, Inc. v. Water Quality Ins. Syndicate, 234 F.3d 974 (6th Cir.2000). In M/G Transport, a relator brought an FCA suit against a subcontractor accused of falsifying records to hide violations of the Clean Water Act. The subcontractor's insurance company refused to defend the action, even though it was required to defend against suits alleging violations of the Clean Water Act. The Sixth Circuit rejected the subcontractor's argument that the insurance company had a duty to defend the FCA suit, distinguishing a violation of the Clean Water Act from the falsification of records to hide that violation:
M/G's arguments are thinly disguised attempts to bootstrap liability for FCA violations into the coverage provided by the environmental pollution policies. Under these circumstances, we cannot conclude that M/G's liability under the Byus Complaint was by reason of, or with respect to, liability to the United States for cleanup costs under the Clean Water Act. An FCA action is not converted into a Clean Water Act action simply because a violation of the Clean Water Act is a predicate to establishing the falsity of a claim, or may be used as a measure of damages under the FCA.
M/G Transport, 234 F.3d at 978. See also U.S. ex rel. Hopper v. Anton, 91 F.3d 1261, 1266 (9th Cir.1996) ("The [FCA] attaches liability, not to underlying fraudulent activity, but to the `claim for payment.'") (citations omitted).
Horizon West's argument for coverage is similar to the arguments rejected in M/G Transport and Hopper. Horizon West contends that St. Paul has a duty to defend against the FCA suit because it has a duty to defend against suits alleging injury arising from substandard patient care. To support its theory that the FCA suit is based on allegations of substandard patient care, Horizon West notes that relators' complaint includes numerous allegations of substandard care at Horizon West facilities. These claims, however, do not form the basis for the FCA suit. They are relevant to the FCA suit only as evidence *1078 that the Medicare and Medicaid claims seeking reimbursement for patient care were false.[2] Because the FCA suit arises from the alleged submission of false claims, rather than the allegedly substandard conditions at Horizon West nursing homes, St. Paul only has a duty to defend Horizon West in the FCA suit if its submission of Medicare and Medicaid claims constitutes a "professional service" covered by the insurance policy.[3]

4. Professional services
In Bank of California v. Opie, 663 F.2d 977 (9th Cir.1981), the Ninth Circuit discussed the definition of "professional services" in the context of an insurance policy covering such services:
Something more than an act flowing from mere employment or vocation is essential. The act or service must be such as exacts the use or application of special learning or attainments of some kind. The term "professional" in the context used in the policy provision means something more than mere proficiency in the performance of a task and implies intellectual skill as contrasted with that used in an occupation for production or sale of commodities. A "professional" act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual (citations omitted). In determining whether a particular act is of a professional nature or a "professional service" we must look not to the title or character of the party performing the act, but to the act itself.
Bank of California, 663 F.2d at 981 (holding that the mortgage banker's management of loan proceeds was a professional service because his activities as a mortgage banker "largely consisted of management of credit"). See also Inglewood Radiology Med. Group, Inc. v. Hosp. Shared Services, Inc., 217 Cal.App.3d 1366, 1370, 266 Cal.Rptr. 501 (1989) (holding that a physician's decision to terminate an employee constituted an administrative decision rather than a professional service).
In Medical Records Assoc., Inc. v. American Empire Surplus Lines Ins. Co., 142 F.3d 512 (1st Cir.1998), the First Circuit, *1079 using the same definition of professional services as the Ninth Circuit in Bank of California, held that billing for services rendered is not a professional service. There, a medical records processor that had allegedly overcharged clients for copying sued its insurer for failing to defend it against a claim for including improper charges on its bills. The court held that billing was not a professional service, explaining that "[a]s in most other businesses, the bill is an effect of the service provided, not part of the service itself." Id. at 516. This conclusion is even more compelling when applied to the circumstances of this case, as a retirement home's submission of claims for medical services is even more attenuated from its professional function than a medical records processor's billing of clients for making copies of medical records.
Horizon West contends that the submission of Medicare and Medicaid claims constitutes a professional service because the complexity of the billing and claims process requires that the individuals submitting the claims have specialized knowledge. (See Opp. 19-20.) Horizon West, however, fails to offer any legal authority that submission of Medicare and Medicaid claims constitutes anything other than "ordinary activities achievable by those lacking the relevant professional training and expertise." Medical Records, 142 F.3d at 514.

III.
St. Paul's motion to dismiss is GRANTED.
IT IS SO ORDERED.
NOTES
[1] The FCA imposes liability on a person who:

(1) knowingly presents, or causes to be presented, to an officer or employee of the Government or a member of an armed force a false or fraudulent claim for payment or approval; [or]
(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved;
31 U.S.C. § 3729(a).
[2] This case is distinguishable from Vandenberg v. Superior Court, 21 Cal.4th 815, 88 Cal.Rptr.2d 366, 982 P.2d 229 (1999) and Gray v. Zurich Ins. Co., 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). In those cases, the facts alleged in the plaintiff's complaint supported several possible theories of liability and recovery, and the insurer was held to have a duty to defend against all claims that could possibly be brought by the plaintiff, regardless of the legal theory asserted in the complaint. See Vandenberg, 21 Cal.4th at 840-41, 88 Cal.Rptr.2d 366, 982 P.2d 229 (holding that where insurer provided coverage for losses arising from property damage, losses pled as contractual damages but arising from property damage were covered); Gray, 65 Cal.2d at 271-72, 419 P.2d 168 (holding that although the plaintiff alleged intentional assault and the policy coverage excluded intentional assault, the insurer had a duty to defend against the suit). Here, relators' suit is based upon the submission of false claims, and relators have no standing to bring a claim seeking damages from Horizon West for their allegedly substandard patient care.
[3] Horizon West contends that the FCA suit is also based on the actions of Horizon West's formal accreditation board and the actions of Horizon West employees charged with carrying out the directives of the board. The only actions of the Horizon West board or employees that Horizon West alleges are covered under the policy, however, are actions relating to patient care. (See Opp. at 23.) As explained above, however, the FCA suit is not based upon the allegedly substandard patient care, but on the submission of false Medicare and Medicaid claims.