**Jill MARONDE, Plaintiff,**

v.

**SUMCO USA GROUP LONG–TERM DISABILITY PLAN, formerly known as Mitsubishi Silicon America Group Long–Term Disability Plan, and Standard Insurance Company, Defendants.**

**No. CV 03–406–HA.**

United States District Court, D. Oregon.

April 14, 2004.

Megan E. Glor, Swanson, Thomas & Coon, Portland, OR, for Plaintiff.

Andrew M. Altschul, Kurt Barker, Stoel Rives LLP, Portland, OR, for Defendants.

## OPINION AND ORDER

HAGGERTY, Chief Judge.

This is an employment case filed in March 2003 by plaintiff against Sumco USA Group Long–Term Disability Plan (Sumco) and Standard Insurance Company (Standard) alleging denial of disability benefits and violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* On October 24, 2003, plaintiff filed a Motion for Summary Judgment (Doc. # 17). On December 17, 2003, defendants filed a Cross–Motion for Summary Judgment (Doc. # 33). The court heard oral arguments on March 10, 2004. For the following reasons, plaintiff's Motion for Summary Judgment is granted and defendants' Cross–Motion for Summary Judgment is denied.

## ARGUMENT

Plaintiff seeks to recover from defendants' disability insurance benefits pursuant to the terms of a long-term disability plan (the Plan) and under 29 U.S.C. § 1132(a)(1)(B). Plaintiff also seeks an order pursuant to ERISA, 29 U.S.C. § 1132(a)(3), compelling defendants to return all profits they obtained by denying plaintiff disability benefits.

Plaintiff claims she suffers from Chronic Fatigue Syndrome (CFS), which causes her severe and relentless fatigue and concentration difficulties, dizziness, fevers, and headaches. On September 1, 1999, plaintiff left her job as a Human Resources Generalist with Sumco (formerly Mitsubishi Silicon) and received short-term disability (STD) benefits from Standard for the maximum benefit period under the STD plan. Plaintiff's position was eliminated in December 1999 after she exhausted her Family Medical Leave Act.

Standard denied plaintiff's initial application for long-term disability (LTD) benefits, stating that plaintiff failed to submit evidence of a disabling condition. Standard later awarded plaintiff benefits, but clarified that Standard considered plaintiff's disability to be mental and not physical. The Plan under which plaintiff seeks LTD benefits provides a limitation for a disability that is caused or contributed to by a mental disorder. If a claimant is disabled due to a mental disorder, the maximum period of benefits is twenty-four months. Accordingly, Standard paid plaintiff LTD benefits for twenty-four months.

Plaintiff asserts that Standard has a conflict of interest because Standard is both the claims administrator and the paying company in this case. Plaintiff argues that Standard was biased toward denying plaintiff's claim by: (1) requiring objective evidence of plaintiff's disability, (2) asserting that CFS is not disabling, and (3) relying on unsupported and conjectural conclusions of a mental health evaluator that plaintiff suffers from a mental disorder. Plaintiff claims that in doing so, Standard breached its fiduciary duty to plaintiff. Plaintiff urges the court to review Standard's decision *de novo*. Even if the court decides instead to review Standard's decision for an abuse of discretion, plaintiff argues that Standard has abused that discretion by relying on clearly erroneous interpretations of its own policy and unreasonable findings of fact in making this benefit determination. Plaintiff asserts that she has provided substantial evidence that she is disabled due to a physical disorder and that Standard's termination of benefits based on the "mental illness" limitation is unreasonable.

## FACTUAL BACKGROUND

The following facts are derived from the parties' Concise Statement of Material Facts and accompanying affidavits and are undisputed.

### 1. Plaintiff's Medical History

Plaintiff began treating with her primary care physician, Dr. Edward E. Conrad, M.D., in April 1994. In September 1997, plaintiff saw Dr. Conrad for an evaluation of intermittent fatigue and nausea. Plaintiff described a low energy level. Plaintiff began treating with Dr. Craig Greenburg, M.D., an endocrinologist, in November 1997. Dr. Greenburg noted that plaintiff's symptoms included fatigue, nausea, constipation, poor memory, and cold intolerance. A subsequent biopsy confirmed that plaintiff suffered from Hashimoto's thyroiditis.

On August 24, 1999, plaintiff saw Dr. Conrad for nausea, fatigue, chronic motion sickness, memory problems and daily headaches. Dr. Conrad assessed headaches of two types and prescribed a trial of prednisone and Fioricet for the migraine headaches. On September 2, 1999, plaintiff telephoned Dr. Conrad to report that she was unable to work and had nausea. Dr. Conrad prepared a letter and faxed it to Sumco, noting that plaintiff was unable to work because of her medical problems.

### 2. Plaintiff's Disability Claim

Under the Plan, Standard has full and exclusive authority to administer claims, interpret the policy, and determine entitlement to benefits. Standard also decides the sufficiency and amount of information required to determine entitlement to benefits. The Plan does not exclude CFS as a disabling condition and it does not require that a claimant produce objective medical evidence of disability.

Plaintiff applied for STD benefits on September 4, 1999. In her Disability Claim Statement, plaintiff described her symptoms as "inability to mentally track [and] concentrate; headaches and dizziness not conducive to working." She noted that she had experienced "several months of nausea, dizziness, tiredness, and headaches." Dr. Conrad noted on Standard's Physician Statement that plaintiff had symptoms of vertigo and recommended that an ear, nose, and throat specialist (ENT) evaluate plaintiff.

On September 29, 1999, plaintiff's claim was accepted by Standard and benefits were approved from September 1 through October 10, 1999. On September 30, 1999, Standard informed plaintiff that her claim would be paid so long as she remained disabled, for a maximum period of thirteen

weeks. At Standard's request, Dr. Conrad submitted an Attending Physician Statement on October 14, 1999. Dr. Conrad noted that plaintiff's condition had improved and she could be expected to return to work on October 15, 1999.

Plaintiff did not return to work as expected. Her continued disability was documented by Dr. David Wilson, an ENT specialist, and Dr. Conrad. Dr. Wilson diagnosed vertibulopathy with vertigo and nausea. In an Attending Physician Statement dated October 22, 1999, Dr. Conrad diagnosed plaintiff with vertigo and nausea, and added a diagnosis of memory loss. He stated that plaintiff would not be able to work through November 1999. Dr. Conrad completed another Attending Physician Statement on December 5, 1999. He diagnosed plaintiff with chronic fatigue, vertigo, and fibromyalgia. He stated that plaintiff's return date was unknown.

On December 22, 1999, Standard sent a letter to plaintiff, noting that the company had received Dr. Conrad's statement. The letter questioned the severity of plaintiff's condition and asked for a list of her treating physicians over the past year. Plaintiff responded to Standard's request and identified her physicians in a telephone call to Standard on December 31, 1999. She stated that she had been treated by Dr. Conrad, Dr. Wilson, Dr. Greenburg, Dr. Ash, a neurologist, and Dr. Thom, a naturopath.

On January 19, 2000, Standard's Senior Disability Benefits Analyst, Phil Derby, prepared a memorandum for Standard's physician consultant, Dr. Bradley Fancher, M.D. In his response to Derby dated January 19, 2000, Dr. Fancher stated that he had reviewed plaintiff's medical records and noted that she had a history of fatigue but that the origin of her fatigue was unknown. Dr. Fancher opined that although plaintiff experienced chronic headaches, he did not believe that plaintiff was unable to work on a continuous basis. Dr. Fancher's conclusion was based on the lack of objective evidence of a disease that could be reasonably anticipated to impair plaintiff from working. According to Dr. Fancher, the subjective nature of plaintiff's complaints and the absence of objective findings made analysis of plaintiff's claim difficult. Dr. Fancher urged plaintiff to submit any additional documentation.

Derby recommended that Standard deny plaintiff's LTD claim on January 20, 2000. In his memorandum, Derby stated that Standard had paid plaintiff's STD benefits primarily due to her subjective symptoms and because she was being seen and evaluated by a number of specialists. However, Derby noted, there had never been a clear diagnosis from Dr. Conrad specifying plaintiff's limitations and restrictions. Derby further stated that plaintiff's Hashimoto's thyroditis did not result in disability and that the medical records did not sufficiently account for plaintiff's subjective complaints.

Standard denied plaintiff's LTD claim in a letter dated January 21, 2000. In the letter, Standard stated that CFS is a controversial diagnosis and that Dr. Fancher opined that plaintiff's medical records do not support plaintiff's assertion that she is disabled due to CFS.

On January 31, 2000, plaintiff requested review of her claim. Dr. Conrad responded to Standard's letter by disputing Dr. Fancher's conclusion and reiterating that plaintiff does in fact suffer from CFS. Standard then referred plaintiff's claim to its own internal "Quality Assurance Unit" for review.

Dr. Steven Beeson, another physician consultant for Standard, reviewed plaintiff's claim and submitted a memorandum on July 13, 2000. Dr. Beeson stated that he did not believe that plaintiff's headaches were significant enough to preclude her

from a sedentary occupation. Dr. Beeson explained that there is no objective evidence or clear medical records indicating the severity of plaintiff's fatigue and her limitations. Dr. Beeson echoed Dr. Fancher's opinion that CFS is a controversial diagnosis.

Standard upheld the denial of plaintiff's claim in a letter dated July 24, 2000. Standard stated that plaintiff's complaints of vertigo and headaches, due to their intermittent nature, were not disabling on a reasonably continuous basis. Standard then described plaintiff's diagnoses of fibromyalgia and CFS as unsupported and/or non-limiting. Standard also rejected plaintiff's claim for disability from CFS based on a lack of objective medical evidence and because Standard was unable to establish that the fatigue prevented her from working. Standard noted that Dr. Conrad had not addressed other possible psychological causes for plaintiff's complaints.

Plaintiff's doctors did not test plaintiff for a mental illness, stating that they did not believe that plaintiff's symptoms were psychological in nature. On October 18, 2000, at Standard's request, plaintiff underwent a psychological evaluation and a personality test with Dr. Beth Ann Denman. Dr. Denman diagnosed undifferentiated somatoform disorder. She stated that plaintiff believes she has CFS, but otherwise did not appear to have any physical limitations. Dr. Denman concluded that there were no objective findings that prevented plaintiff from working. Dr. Denman recommended that plaintiff undergo six months of psychotherapy and that she be prescribed anti-depressants. Dr. Jack Davies, a neuropsychologist, interpreted plaintiff's personality test and reported that plaintiff is somatically focused on a variety of symptoms that do not have any objective basis.

On December 1, 2000, Standard informed plaintiff that it had accepted her LTD disability claim, but that her benefits were limited to twenty-four months due to the mental illness limitation under the Plan. Standard told plaintiff her LTD benefits were approved retroactively to December 1, 1999, and would end on November 30, 2001.

Ten months later, on September 18, 2001, plaintiff appealed Standard's decision to apply the mental illness limitation to her claim. In a memorandum by Dr. Fancher to Standard dated December 13, 2001, Dr. Fancher reaffirmed his opinion that plaintiff suffered from an undifferentiated somatoform disorder. Dr. Fancher stated that it was reasonable for Standard to conclude that the objective medical evidence failed to reveal the presence of a physical disease that would prevent plaintiff from working full-time. On January 7, 2002, Standard notified plaintiff that it was upholding its decision to terminate her claim under the Plan's mental illness limitation. Standard further informed plaintiff that her claim was being sent again to the Quality Assurance Division for review.

On March 4, 2002, Standard notified plaintiff that it had concluded its review and upheld its determination. Standard stated that it would not accept the diagnosis of CFS as an explanation for plaintiff's illness and that undifferentiated somatoform disorder was a more likely explanation.

***STANDARDS***

**1. Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is

not proper if factual material exists for trial. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. Assuming there has been sufficient time for discovery, summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party; and (3) the court must assume the truth of direct evidence set forth by the nonmoving party if it conflicts with direct evidence produced by the moving party. *T.W. Elec. Serv. v. Pac. Elec. Contractors,* 809 F.2d 626, 630 (9th Cir.1987). Summary judgment is not appropriate when different ultimate inferences can be reached. *Sankovich v. Life Ins. Co. of N. Am.,* 638 F.2d 136, 140 (9th Cir.1981).

The issue of material fact required by Rule 56 to entitle a party to proceed to trial does not need conclusive resolution in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the claimed factual dispute to require a trier of fact to resolve the parties' differing versions of the truth at trial. *Id.* At the summary judgment stage, the judge does not weigh conflicting evidence or decide credibility. Those determinations are the province of the fact-finder at trial. *Id.,see also Abdul–Jabbar v. Gen. Motors Corp.,* 85 F.3d 407, 410 (9th Cir.1996) (on a motion for summary judgment, the court does not weigh the evidence or determine the truth of the matter asserted, but decides only whether there is a genuine issue for trial).

**2. ERISA**

ERISA was enacted to promote employees' interests and their beneficiaries' interests in employment benefit plans and to protect contractually defined benefits. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). ERISA furthers these goals in part by regulating the manner in which employers process benefit claims. *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 123 S.Ct. 1965, 1970, 155 L.Ed.2d 1034 (2003).

■ The standard with which this court must review a plan administrator's decision depends upon how much discretion the plan grants an administrator. *Firestone,* 489 U.S. at 115, 109 S.Ct. 948. When an ERISA plan vests its administrator with the discretion to determine eligibility for benefits or to construe the terms of the plan, the district court ordinarily reviews the administrator's decision for abuse of discretion. *Lang v. Long–Term Disability Plan of Sponsor Applied Remote/Technology, Inc.,* 125 F.3d 794, 797 (9th Cir.1997). The degree of judicial deference may be affected by several factors such as a conflict of interest. *Id.* at 797. The Ninth Circuit recognizes there is an apparent conflict of interest when a plan administrator is responsible for both funding and paying for claims. *Bendixen v. Standard Ins. Co.,* 185 F.3d 939, 943 (9th Cir.1999).

■ This is a fully-insured plan because Standard receives premiums and pays plaintiff from its own assets. Accordingly, plaintiff argues that Standard's fiduciary role is in conflict with its interest in profit-making as a business. *See Lang,* 125 F.3d at 797; *Brown v. Blue Cross and Blue Shield of Alabama, Inc.,* 898 F.2d 1556, 1561 (11th Cir.1990). Where such a conflict of interest exists, the abuse of discretion standard still applies unless it is apparent that the conflict influenced the decision. *Lang,* 125 F.3d at 798. Where there is evidence that the conflict may have resulted in a breach of fiduciary duty, the court may perform a more searching inquiry in reviewing the challenged decision. *Firestone,* 489 U.S. at 115, 109 S.Ct. 948.

■ To show such a conflict, the plaintiff must set forth "material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary." *Id.* (quoting *Atwood v. Newmont Gold Co., Inc.,* 45 F.3d 1317, 1322 (9th Cir.1995)). Action taken by an administrator in violation of its fiduciary obligation is "presumptively void," and where an affected beneficiary comes forth with material evidence of such a violation, the court should not defer to the administrator's presumptively void decision. *Atwood,* 45 F.3d at 1323.

■ When the plaintiff comes forth with evidence of a fiduciary breach, the defendant bears the burden of rebutting that presumption by producing evidence to show that the conflict of interest did not affect its decision to terminate benefits. *Brown,* 898 F.2d at 1566–67. If the defendant fails to carry its burden, the court's review is *de novo,* "without deference to the administrator's tainted exercise of discretion." *Atwood,* 45 F.3d at 1323.

■ It is an abuse of discretion to impose a term into a plan or otherwise interpret a plan in a manner inconsistent with its plain words. *See, e.g., Saffle v. Sierra Pac. Power Co.,* 85 F.3d 455, 459–60 (9th Cir.1996) (a plan administrator lacks the discretion to impose new requirements into the terms of the plan); *see also Taft v. Equitable Life Assurance Soc'y,* 9 F.3d 1469, 1472–73 (9th Cir.1993); *Mitchell v. Eastman Kodak Co.,* 113 F.3d 433, 443 (3rd Cir.1997) (it is not reasonable for an insurance company to require claimants suffering from CFS to provide clinical objective evidence).

### ANALYSIS

The Plan in this case confers discretionary authority on Standard to construe and apply the terms of the Plan in connection with reviewing benefits decisions. As such, this court applies the abuse of discretion standard of review unless plaintiff can show that a conflict of interest influenced Standard's benefits decision. There being an insufficient showing of material and probative evidence establishing that Standard's self interest caused a breach of its fiduciary obligations to plaintiff, this court reviews Standard's decision for an abuse of discretion.

■ An ERISA plan administrator abuses its discretion when it construes a plan so as to impose new requirements for coverage. *Jones v. Laborers Health & Welfare Trust Fund,* 906 F.2d 480, 481–82 (9th Cir.1990). Unless a plan contains specific requirements for objective medical evidence, a plan administrator cannot deny a claim for CFS simply because the plaintiff presents no such evidence. *See Mitchell,* 113 F.3d at 443; *see also Connors v. Conn. Gen. Life Ins. Co.,* 272 F.3d 127, 136–37 (2nd Cir.2001) (finding a claimant's credible, subjective complaints of pain to be legally sufficient proof of disability).

■ The facts show that Standard imposed the objective evidence requirement from the outset of plaintiff's claim, and each professional who subsequently reviewed plaintiff's claim required objective evidence. By refusing to evaluate plaintiff's claim absent objective evidence, Standard abused its discretion by imposing new terms into the Plan.

In a case involving similar facts, Judge Jelderks reversed Standard's decision denying a plaintiff's claim for LTD benefits under ERISA. In reaching his decision, Judge Jelderks stated,

> Standard's overriding concern was 'objective medical evidence.' While that certainly is a relevant consideration, Standard erred ... by elevating it to an absolute prerequisite. Not all medical conditions are readily susceptible to verification by x-rays or other laboratory tests. Some complaints—such as pain and fatigue—are difficult to objectively measure.... Merely because we cannot see pain or fatigue on an x-ray, or measure it in a laboratory, does not mean that it is not real.... These symptoms may also persist notwithstanding our uncertainty as to the precise etiology. In such cases, diagnostic procedures such as x-rays and lab tests are only one component of the total picture.

*Palmer v. Univ. Med. Group*, 994 F.Supp. 1221, 1233 (D.Or.1998), *rev. abrogated on other grounds, Hensley v. Northwest Permanente PC Retirement Plan & Trust*, 258 F.3d 986 (9th Cir.2001).

Under the terms of the Plan, once twenty-four months of disability benefits have been paid, a participant is disabled when she is unable to perform her job with reasonable continuity due to a physical disease, injury, pregnancy, or mental disorder. *See* Affidavit of Megan E. Glor (Glor Aff), Ex. B, at 8. The Plan defines "physical disease" as a "process that produces structural or functional changes" in the claimant's body and is diagnosed by a physician. *Id.* at 21. Plaintiff contends that her claims of fatigue, nausea, and chronic headaches are physical diseases that were diagnosed by her treating physician. The Plan also requires proof that the claimant is disabled and entitled to LTD benefits. There is no requirement that this proof be shown by objective evidence.

Standard denied plaintiff's claim for LTD benefits beyond the twenty-four month limitation. Plaintiff asserts that Standard denied her claim because there was no objective medical evidence supporting her claim of CFS. *See e.g.,* Glor Aff., Ex. A, at 186 (memorandum from Dr. Beeson stating "there is no clear and objective evidence that the patient suffers from a disease process that would limit her from sedentary work.").

Standard argues that even if its reviewers did require objective medical evidence when evaluating plaintiff's claims, it was within their discretionary authority to do so. *See Jordan v. Northrop Grumman*, 63 F.Supp.2d 1145, 1156 (C.D.Cal.1999); *see also Voight v. Metro. Life Ins. Co.*, 28 F.Supp.2d 569, 579 (C.D.Cal.1998). This argument is unpersuasive. *Jordan* and *Voight* recognized that it is not abuse of discretion for an administrator to favor objective evidence over subjective evidence. They do not, however, hold that an administrator may require objective medical evidence when the plan does not.

The court finds that plaintiff has presented evidence of classic symptoms of CFS to Standard. Plaintiff's physical test results were within normal limits. Dr. Conrad was clear and unequivocal in his opinion that plaintiff was disabled from CFS. Psychological illness was eliminated by plaintiff's doctors because there was no reasonable basis to believe that a mental

illness explained her condition. Standard issued an ERISA plan that does not exclude CFS as a disabling condition and that does not require that a claimant produce objective medical evidence of disability. By elevating the production of objective evidence to a prerequisite when the Plan did not so require, Standard acted unreasonably. Accordingly, this court concludes that Standard abused its discretion by successively imposing extra-contractual eligibility criteria that contradicts the plain language of the Plan.

■ Although the court concludes that Standard abused its discretion by imposing a new requirement into the terms of the Plan, the court will briefly address plaintiff's other grounds for relief. Plaintiff argues that Standard was biased toward denying her claim by asserting that CFS is not disabling and by relying on unsupported and conjectural conclusions of Dr. Denman that plaintiff suffers from a mental disorder.

First, Dr. Denman concluded that plaintiff had a somatoform disorder based on an unidentified psychological conflict. Dr. Denman reached this conclusion despite plaintiff's physical symptoms, plaintiff's lack of psychiatric history, and plaintiff's physicians' reports supporting disability due to CFS. The American Medical Association has recognized that CFS is a disabling condition. *See Friedrich v. Intel Corp.*, 181 F.3d 1105, 1112–13 (9th Cir. 1999). The Social Security has recognized that CFS is a disabling condition. *See* Social Security Ruling Titles II and XVI: Evaluating Cases Involving Chronic Fatigue Syndrome (April 30, 1999). Aside from Dr. Denman's opinion, Standard failed to articulate any valid scientific or medical criteria for ruling out CFS as a cause of plaintiff's disability.

Second, there is no evidence that Dr. Conrad suggested that plaintiff had a mental disorder. There is no indication in the record that plaintiff ever received or was referred for mental health treatment. Plaintiff had no history of depression or any other mental disorder. However, Standard suggested that Dr. Denman evaluate plaintiff in October 2000 for the possibility of a mental disorder. In her report, Dr. Denman noted that plaintiff suffered from headaches, had difficulty concentrating and sleeping, and complained of dizziness and chronic muscle aches. Dr. Denman concluded that plaintiff had an underlying psychological conflict that formed the basis of plaintiff's somatoform disorder. Dr. Denman dismissed the possibility that CFS was the cause of plaintiff's symptoms but did not explain her conclusion. Standard relied in part on Dr. Denman's conclusion in denying plaintiff's LTD benefits claim. This reliance, when unsupported and in direct contradiction to the evidence in the record, was unreasonable.

For these additional reasons, the court concludes that Standard abused its discretion when determining plaintiff's eligibility for LTD benefits.

### CONCLUSION

Plaintiff's Motion for Summary Judgment (Doc. # 17) is GRANTED and defendants' Cross–Motion for Summary Judgment (Doc. # 33) is DENIED. Plaintiff's monthly LTD benefits are to be reinstated, retroactive to December 1, 2001.

IT IS SO ORDERED.