Herbert **MINDT**, Plaintiff,

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA and Aon Corporation Long Term Disability Employee Benefit Plan, Defendants.**

**No. CV–03–761–ST.**

United States District Court, D. Oregon.

June 4, 2004.

Megan Elizabeth Glor, Swanson Thomas & Coon, Portland, OR, for Plaintiff.

Robert E. Maloney, Jr., William T. Patton, Lane Powell Spears & Lubersky, LLP, Portland, OR, for Defendants.

## OPINION AND ORDER

STEWART, United States Magistrate Judge.

### INTRODUCTION

Plaintiff, Herbert Mindt ("Mindt") worked as a divisional manager for Aon Corporation ("Aon") between 1997 and April 2002. Defendant, Prudential Insurance Company ("Prudential") issued, and is the claims administrator for, Aon's Long Term Disability Plan (the "LTD Plan"). Mindt alleges that Prudential violated the Employee Retirement Income Security Act of 1974, 29 USC § 1001, *et seq.* ("ERISA"), by erroneously denying his application for benefits under the LTD Plan.

This court has jurisdiction under 28 USC § 1331 and 29 USC § 1132(e)(1). This matter is now before the court on the parties' briefs. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(©).

For the reasons that follow, this court reverses Prudential's denial of Mindt's claim for benefits under the LTD Plan and orders that he be awarded those benefits.

### ANALYSIS

Prudential argues that Mindt failed to exhaust his administrative remedies, which requires a remand of the case back to Prudential, and that its denial of benefits was correct. For the reasons that follow, neither of arguments withstands scrutiny.

### I. *Facts*

The following facts are based on the Stipulation to Administrative Record ("AR") filed in this case on February 6, 2004 (docket # 17).

### A. *Employment with Aon and the LTD Plan*

Mindt began working as a divisional manager at Aon in late 1997. AR 117–18. As an Aon employee, Mindt is eligible for long-term disability ("LTD") benefits under the Aon's LTD Plan, which was issued by Prudential. AR 01–25.

The Plan defines "total disability" as follows:

> "Total Disability" exists when Prudential determines that all of these conditions are met:
> (1) Due to Sickness or accidental injury, both of these are true:
> (a) You are not able to perform, for wage or profit, the material and substantial duties of your occupation.
> (b) After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience. The Initial Duration is shown in the Schedule of Benefits.

AR 10; *see also* AR 91.

### B. *Application for LTD Benefits*

The record reveals that Mindt has a long history of back pain, which began in April 1977 after an injury sustained while pushing a heavy piece of steel at work. AR 184. Despite multiple back surgeries and attempts to control the pain with medication and changes in position, Mindt's treating physician, Dr. Cameron Bangs, noted that Mindt's doctors have discovered "no treatment option . . . that will provide Mr. Mindt with significant relief from his severe lower back pain." AR 183.

As a result of those difficulties, on January 25, 2002, Dr. Bangs advised Mindt to take a month off of work to see if he could better control his pain. AR 124. Despite

that advice, Mindt continued working through April 25, 2002, at which time he quit working. AR 125.

On August 27, 2002, Mindt submitted his application for benefits under the LTD Plan to Prudential, alleging total disability from his job as a divisional manager commencing April 25, 2002, due to "chronic pain—degenerative disc disease." AR 106–07. Mindt noted that he had repeatedly been hospitalized for back surgery between 1983 and 1992. AR 107. Dr. Bangs completed three pages of the disability claim form, noting that Mindt suffered from a degenerative back condition, had undergone back surgeries in 1989, 1983, 1984, 1985, and 1993, and was taking 20 mg. of Methadone and 10 mg. of OxyContin.[1] AR 113–15. In the space asking when he expected to return to work, Mindt wrote "NEVER." AR 106. He listed his primary care physician as Dr. Bangs and listed no other medical care providers on his LTD benefits application form. AR 106–07.

### C. *Initial Denial of Claim*

On October 22, 2002, Prudential conducted an initial interview of Mindt. AR 120. Following that interview, Prudential noted that Mindt "has [a] long standing back condition with prior [surgeries] including laminectomy and fusion. [Mindt] worked with his condition in the past, recommend to request records, one year prior to [disability onset date] to see if there was a significant change in [Mindt's] condition to prevent him from working." AR 121. Pursuant to Prudential's request, Dr. Bangs sent Prudential Mindt's medical records for the period between May 2001 and October 25, 2002. AR 122–28.

Prudential reviewed the materials submitted by Mindt, Dr. Bangs, and Aon in connection with Mindt's LTD claim. See

AR 134–35. On November 6, 2002, the claims manager summarized Dr. Bang's chart notes as follows:

> [Mindt] has been treating for low back pain since 2001. [Mindt had] multiple [surgeries] in the past and reports that he will not be under going [surgery] again. Treatment has consisted of pain management with medications, [*i.e.*] Methadone, Oxycontin, and vicodin. As of 1/25/02 ... Dr. Bangs [noted that Mindt] should no longer work and plan for retirement is suggested do [sic] to low back pain and stress. [Mindt] continued to work until 4/26/02 [sic] when pain med[ications] increased. There are no physical exams to substantiate impairment and [Mindt] continues to treat only with Dr. Bangs.

AR 134.

She concluded that "[Mindt] continues with [subjective] complaints of pain which are chronic in nature and ... he had worked with in the past. The decision to currently go [off of work] as noted in ½5/02 [office visit note] is most likely a retirement issue v[ersus] a disability issue." *Id.*

The following day, she recommended disallowance of Mindt's claim for LTD benefits, with the following entry:

> [Mindt] is a 49 [year old] male divisional administrator [off of work] due to [diagnosis] of degenerative back pain. ... [Mindt] has long standing back condition with prior [surgeries] including laminectomy and fusion. Based on medical records received, [Mindt] worked with this condition in the past and there is no medical documentation to support a significant change that occurred in [his] condition that caused him to go [off of work]. [Mindt] only treats with [his primary care provider], and there [are] no exam findings in [Dr. Bangs'] file. Med-

---

1. OxyContin is a brand name of Oxycodone.

ical information only consisted of subjective complaints of pain. [Dr. Bangs] notes in½5/02 that [Mindt] should plan for retirement due to stress and pain. While we understand [Mindt] has pain, his medical condition during the time he went [off of work] does not appear to be substantially different from his medical condition during the time he was working. Recommend to disallow LTD claim.

AR 135.

Prudential then called Mindt and explained that his medical records showed "only sub[jective] complaint of pain [and lacked] medical documentation to support why [he] can't work," and "indicate that he worked in the past with [the] condition." AR 146. In response to Mindt's statement that he "would not walk away from a[$]55,-000 a year paying job if he was not disabled," she "advised that [Prudential] can not approve a claim based on subjective information." *Id.*

The same day, Prudential sent a letter to Mindt denying his claim. AR 136–38. Prudential explained the reasons for its decision as follows:

> In information in your file indicates that you ceased work at Aon Corporation, as a divisional administrator, on April 26, 2002 due to degenerative back pain. To gain a clearer understanding of your condition, we requested medical records from your treating primary care physician Dr. Bangs. The information from Dr. Bangs included medical records dating back from May 2001 to present. Records received indicated that you have a longstanding history of back pain. In your May 18, 2001 office visit, Dr. Bangs indicated that you had multiple problems including uncontrolled back pain, as well as anxiety attacks. You were taking pain medications to treat your condition. He indicated that you considered retirement. In your January

> 25, 2002 office visit, Dr. Bangs indicated that you still had uncontrolled back pain that was being treated with pain medications. He stated that he thought your back pain should be better controlled; retirement may be a better alternative. Dr. Bangs indicated in his April 26, 2002 office note, that at your January 25, 2002 office visit, he wrote you a note indicating that due to your back pain and stress associated with it, you should be off work. Our file indicates that you did not go out of work until April 26, 2002. There were no physical examinations or test results (MRI's) in your file to support your subjective complaints of pain, or to indicate why you ceased work on April 26, 2002. Your medical condition at the time you went out of work does not appear to be substantially different from your medical condition during the time you were working. While [we] recognize that you have back pain and my be considering retirement, available evidence clearly shows that you were able to work with your medical condition prior to going out of work. Therefore, you do not meet the definition of Total Disability as stated above, and we have disallowed your claim.

AR 136–37.

Prudential also advised Mindt of his right to appeal the decision and the type of additional supporting information to submit. AR 137–38. On November 27, 2002, Prudential sent Mindt a copy of the LTD Plan, pursuant to his request, and once again advised him of his appeal rights. AR 147.

### D. *Appeal*

On December 7, 2002, the Social Security Administration sent Mindt a letter advising him that he was being awarded social security disability benefits based on a finding that he became disabled on April

24, 2002. AR 150–53. A couple of weeks later, Mindt decided to appeal the denial of his claim for LTD benefits. AR 154. On December 20, 2002, Mindt's attorney contacted Prudential and requested a copy of his claim file. *Id.* Prudential complied on January 13, 2003. *See* AR 159.

On March 12, 2003, Mindt submitted his appeal to Prudential, along with medical records dating from 1977 through 2001.[2] AR 175–81, 184–223, 226. Those records confirm that Mindt had multiple back surgeries and has suffered from chronic severe back pain since the 1970s. Mindt also submitted a letter from Dr. Bangs dated March 5, 2003. AR 182–83. In that letter, Dr. Bangs states that "Mr. Mindt has a long history of increasingly disabling back pain. Long before he left work in April 2002, he had moderate to severe lower back pain. For example, you will see in my notes in May 2001, that I describe severe back pain with leg and feet pain." AR 182. He also explained that when he discussed "retirement" in his chart note, he was referring to disability retirement. *Id.*

On March 14, 2003, Prudential responded that it had received Mindt's appeal and was "performing a thorough evaluation" of his claim for benefits. AR 170. The letter specified that Prudential would contact Mindt's attorney "within 30 days with the status of [Prudential's] evaluation if a decision has not yet been rendered." *Id.*

Prudential noted the following on March 24, 2003:

> Discussed medical info and attorney letter with clinician. Records document multiple surgeries (4+) in the past. However, there is no evidence of a change in [Mindt]'s condition, that would prompt 4–02 disability, with the exception of increased med[ication]s. Be-

tween the period 1–02 and 4–02, [medication] dosage was increased from 20 to 50 mg. However, there is minimal information pertaining to [Mindt]'s function. Previous plan included contacting [Mindt's attorney] to confirm if [Mindt] underwent any other consultations or diagnostic testing since 4–02. Otherwise, consider IME.

AR 227.

On April 2, 2003, in response to Prudential's inquiry, Mindt's attorney advised that Mindt had not received any treatment from anyone other than Dr. Bangs since June 2002. AR 241.

### E. *Demand for an IME*

By April 16, 2003, Prudential had decided to schedule Mindt for an independent medical examination ("IME") and hired Professional Appointment Services, Inc. ("PAS") to make those arrangements. AR 242. On April 17, 2003, PAS scheduled an appointment for Mindt with Dr. Robert A. Berselli, an orthopedist in Portland, Oregon, for April 24, 2003 at 9:00 a.m. AR 243.

Four days later, on April 21, 2003, PAS sent a letter by second-day air mail to Mindt's attorney informing her of the April 24, 2003 IME. AR 245. That letter arrived in Mindt's attorney's office less than two hours before the close of business on April 23, 2003, the day before the IME appointment. AR 250. Mindt's attorney was out of the office that day, and her staff was unable to contact Mindt and advise him of the appointment set for the next morning, so he did not attend the IME. *Id.*

On April 25, 2003, Prudential sent Mindt a letter stating:

> We are continuing our review of your claim for Long Term Disability (LTD)

---

**2.** The letter outlining Mindt's position relative to his first appeal was faxed to Prudential on March 12, 2003. AR 161–68, 175. The supporting documentation was mailed the same day.

benefits under Group Policy # 97737 issued to Aon Corporation.

We are continuing to evaluate your claim. As soon as your IME is received we will review it to determine if any further information is needed before we make a decision on your appeal.

We will contact you within 30 days with the status of our evaluation if a decision has not yet been rendered.

AR 252.

By letter dated May 1, 2003, PAS advised Mindt's attorney that the IME had been rescheduled for May 13, 2003. AR 256. In a letter dated May 7, 2003, Mindt's attorney advised Prudential that it was not entitled to an IME. AR 261–62. Prudential responded by letter sent via facsimile on May 9, 2003, stating that it had the right to an IME under the LTD Plan and that the "IME was re-scheduled for May 13, 2003 because we need to clarify Mr. Mindt's level of functioning." AR 263. On that same day, Prudential received a letter from Mindt's attorney advising that she had not received a response and Mindt would not be attending the May 13, 2003 IME. AR 265. Accordingly, the IME was canceled. AR 286.

Then on May 12, 2003, Mindt's attorney advised Prudential that although the IME was untimely, Mindt would attend the IME and requested a decision within 20 days of the IME. AR 267. The next day on May 13, 2003, Mindt's attorney again contacted Prudential stating that she did not understand why the IME was canceled. AR 286.

### F. *Filing of Suit and Denial of Appeal*

Mindt filed this lawsuit on June 5, 2003. AR 292. On August 4, 2003, Prudential notified Mindt's attorney that Mindt's appeal had been denied. AR 302. Prudential detailed the reasons for its decision, stating in part:

Mr. Mindt has a 25 year history of back problems. He has worked with his back condition since at least 1997. Mr. Mindt has treated with his primary care physician since discontinuing work and treatment has consisted of medication management. There have been no referrals to specialists or any recommended rehabilitation for his back. The available medical evidence does not support a change in his longstanding back condition that would have prevented him from working since April 2002. We arranged an IME in an attempt to obtain additional information pertaining to Mr. Mindt's function. However, you have indicated that our request was unreasonable at the time of our appeal evaluation. Based on the available documentation, Mr. Mindt is not eligible for benefits under the Policy and we have upheld our previous decision to disallow Mr. Mindt's claim for LTD benefits.

AR 305.

Prudential also advised Mindt of his right to appeal this decision. *Id.*

### II. *Exhaustion*

■ Although ERISA contains no explicit exhaustion requirement, the Ninth Circuit enforces the exhaustion doctrine in the ERISA context:

Quite early in ERISA's history, we announced as the general rule governing ERISA claims that a claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court. Although not explicitly set out in the statute, the exhaustion doctrine is consistent with ERISA's background, structure and legislative history and serves several important policy considerations, including the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method

of claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise. *Diaz v. United Agr. Employee Welfare Benefit Plan and Trust,* 50 F.3d 1478, 1483 (9th Cir.1995), citing *Amato v. Bernard,* 618 F.2d 559, 566–68 (9th Cir.1980) (internal citations and footnote omitted).

 Prudential argues that Mindt failed to exhaust his administrative remedies because he filed this case on June 4, 2003, two full months before Prudential issued a decision on his first appeal, without bothering to go through the two additional appeals provided for in the LTD Plan. Mindt responds that he satisfied the exhaustion requirement because his first appeal was deemed denied under the explicit provisions of the LTD Plan and the two remaining appeals are not required. This court agrees with Mindt.

The LTD Plan allows an employee to file an appeal in writing to Prudential within 180 days of receiving written notice of denial. AR 103. A review of the information in the claim file and any new information submitted by the employee is then undertaken by the Prudential Appeals Review Unit. *Id.* A member of the Prudential Claims Management Team who was not involved in the initial denial makes the decision on appeal. *Id.* at 103–04. No deference is afforded to the initial benefit determination. *Id.* at 104.

Within 45 days of the receipt of the first appeal, the Prudential Appeals Review Unit must make a determination. *Id.* at 104. The 45 day period "may be extended by up to 90 days if Prudential determines that special circumstances require an extension of time." *Id.* However, "[a] written notice of the extension, the reason for the extension and the date that the Prudential Appeals Review Unit expects to render a decision shall be furnished to [the claimant] within the initial 45–day period." *Id.* Moreover, the LTD Plan specifies that

"[i]f a decision is not furnished to [the claimant] within the time frames mentioned above, the claim shall be deemed denied on appeal." *Id.; see also* 29 CFR 2560.503–1(I)(3).

Prudential issued its initial denial of Mindt's claim on November 7, 2002. Mindt then filed his first appeal with Prudential on March 12, 2003. Prudential did not deny that appeal until August 4, 2003, which was more than 45 days after receipt of the appeal.

Nevertheless, Prudential argues that the 45 day period was tolled because Mindt failed to submit to an IME. In support of that argument, Prudential cites 29 CFR 2560.503–1(1)(I)(4), which provides for tolling of the time limit for issuing a decision on appeal where a claimant fails to submit information necessary to decide a claim. However, that provision applies only "[i]n the event that a period of time is extended as permitted pursuant to [29 CFR § 2560.503–1](I)(3)," which in turn explicitly requires the plan administrator, "prior to the commencement of the extension," to "notify the claimant in writing of the extension, describing the special circumstances and the date as of which the benefit determination will be made." The record reveals that Prudential did not satisfy this condition.

Moreover, Prudential failed to schedule the initial IME examination sufficiently in advance of the end of the 45 day period to issue a decision within that time frame, and failed to give sufficient notice of the scheduled IME in order to comply with the requirements of the LTD Plan. The LTD Plan affords Prudential "the right to examine the person whose loss is the basis of the claim … *when and as often as is reasonable when the claim is pending."* AR 21 (emphasis added). Prudential first considered requesting an IME on March 24, 2003, just 10 days after acknowledging

receipt of Mindt's appeal. By April 2, 2003, Prudential knew that Mindt had treated with no doctor other than his primary care physician, Dr. Bangs, since June 2002. By April 17, 2003, PAS scheduled an IME for April 24, 2003.

Despite the fact that the 45 day period for a decision was less than two weeks away, notice of the IME was not sent to Mindt's attorney until April 21, 2003, exactly one week prior to the expiration of the 45 day period for an appeal decision. That notice was sent by second-day air mail and received by Mindt's attorney less than three regular working hours before the IME scheduled for the next day at 9:00 a.m.

Mindt did not attend the IME because his attorney was out of her office on April 23, 2003, and her staff was unable to reach Mindt. On April 25, 2003, Prudential sent a letter to Mindt stating that it was continuing to evaluate his claim, would review his IME to determine if any further information was needed, and would contact him "within 30 days with the status of our evaluation if a decision has not yet been rendered." AR 252. The letter does not state that special circumstances required an extension of the 45 day period for an appeal decision, nor does it give any reason for an extension or a date by which a decision is expected. Thus, Prudential's April 25, 2003 letter does not satisfy the requirements of the LTD Plan for extending the 45 day period for appeal decisions.[3]

Pursuant to the explicit terms of the LTD Plan, the appeal was thus "deemed denied" on April 28, 2003, which is 45 days after March 14, 2003, the latest possible date Prudential could have received Mindt's first appeal.

Prudential argues that Mindt is required to pursue a second appeal before proceeding to federal court. The LTD Plan provides for both a second appeal to the Prudential Appeals Review Unit, as well as a third appeal to the Prudential Appeals Committee. AR 104–05. However, the LTD Plan explicitly makes both the second appeal and the third appeal permissive, not mandatory:

> If the [first] appeal of your benefit claim is denied . . . you or your representative *may* make a second appeal of your denial in writing to Prudential within 180 days of the receipt of the written notice of denial or within 180 days from the date such claim is deemed denied.
>
> * * * * * *
>
> If the second appeal of your benefit claim is denied . . . you or your authorized representative *may* make a third appeal of your denial in writing to the Prudential Appeals Committee within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied.

AR 104–05 (emphasis added).

Nothing in the LTD Plan required Mindt to file a second or a third appeal. Thus, Mindt has exhausted his administrative remedies and nothing requires or counsels in favor of a remand to Prudential.

### III. *Existence of "Total Disability"*

◼ Prudential also argues that this case should be dismissed because Mindt

---

**3.** In 2000, 29 CFR § 2560.503–1 was amended to remove the language stating that a claim is deemed denied on review if the claimant does not receive written notice within the relevant time period. *See Jebian v. Hewlett–Packard Co. Employee Benefits Org. Income* *Protection Plan,* 349 F.3d 1098, 1112 n. 1 (9th Cir.2003). Although the terms of the LTD Plan were modified to reflect the changes in time periods under the amended rule, the "deemed denied" language was not removed from the LTD Plan. AR 103–05.

failed to show he suffered from a "Total Disability" under the terms of the LTD Plan. Prudential maintains that Mindt submitted no objective medical evidence and no evidence of a change in his medical condition at or around the time he went off work indicating that he could no longer perform the material and substantial duties of his job or other jobs.

■ Mindt's request for benefits is premised upon his position that he suffers from disabling back pain. Prudential asserts that it has never rejected Mindt's subjective complaints of pain. However, the record reveals that a need for something other than subjective information was at the forefront of Prudential's denial of Mindt's application. AR 146 ("I advised that [Prudential] can not approve a claim based on subjective information.").

The LTD Plan at issue in this case requires the claimant to submit "written proof of the loss" to Prudential. AR 21. Disability benefits are payable when three "conditions" are met, namely that the claimant is: (1) "not able to perform, for wage or profit, the material and substantial duties of [his or her] occupation" and after the initial period of a period of total disability is "not able to perform ... the material and substantial duties of any job for which [he or she is] reasonably fitted by [his or her] education, training, or experience;" (2) not working at any job for wage or profit; and (3) under the regular care of a doctor. AR 10. While the LTD Plan does not explicitly require objective proof of the loss, it does require proof covering the "occurrence, character and extent" of the loss. AR 21.

Prudential argues that it is well within its rights to require objective evidence of a disability and that to do so does not insert a new term into the LTD Plan. This court agrees because the concept of proof of a loss necessarily includes an objective component:

While plaintiff argues that the plan itself does not state that objective evidence is necessary to establish disability, the plan does state that "proof" of continued disability must be provided, AR 64, and the very concept of proof connotes objectivity. In any event it is hardly unreasonable for the administrator to require an objective component to such proof.

*Maniatty v. Unumprovident Corp.*, 218 F.Supp.2d 500, 504 (S.D.N.Y.2002), *aff'd*, 62 Fed.Appx. 413, 2003 WL 21105390 (2nd Cir.2003), *cert denied,* —— U.S. ——, 124 S.Ct. 431, 157 L.Ed.2d 310 (2003).

This court recently noted that imposing a requirement for "objective medical evidence" absent specific requirements in the plan for that type of evidence is an abuse of discretion:

An ERISA plan administrator abuses its discretion when it construes a plan so as to impose new requirements for coverage. Unless a plan contains specific requirements for objective medical evidence, a plan administrator cannot deny a claim ... simply because the plaintiff presents no such evidence.

*Maronde v. Sumco USA Group Long-Term Disability Plan, et al.*, 322 F.Supp.2d 1132, 1139, 2004 WL 825627, at *7 (D.Or.2004) (citations omitted).

However, in that case and the cases on which it relied, the allegedly disabling condition was chronic fatigue syndrome, which is not a condition amenable to diagnosis by means of a particular objective test. The court concluded that the plan administrator had abused its discretion by imposing a requirement for objective medical evidence.

Unlike *Maronde*, this case involves allegations of disabling pain caused by Mindt's longstanding problems with his back. And unlike *Maronde*, Mindt's application is bolstered by objective evidence of a back

condition which fully supports his subjective complaints of disabling pain. Although the LTD Plan at issue here does not expressly require objective proof of disability, it was reasonable for Prudential to seek such proof to ascertain the "occurrence, character and extent" of the alleged loss. However, contrary to Prudential's contention, Mindt has submitted such proof spanning a period of over two decades. His disabling back pain is substantiated by multiple back surgeries, his increasing age, and his increased dosages of pain medication.

The other reason stated by Prudential for denying Mindt's disability benefits is that he has failed to show any change in his condition in or around April 2002 which prevented him from continuing to perform the duties of his job. Although Prudential acknowledges that the record shows that Mindt had back pain for many years, it views Mindt as making a calculated decision to retire in April 2002. Prudential asserts that it should not be required to fund this "early retirement."

The essence of this argument is that Mindt continued to work for four months after Dr. Bangs advised him to take a month off to see if it would help with his back pain, and that Mindt is barred from seeking benefits under the LTD Plan unless he can establish some specific change in his condition between January and April 2002 that prevented him from continuing to work. Contrary to Prudential's contention, Mindt has submitted objective proof of a change in circumstances.

Despite Dr. Bangs' explanation that he intended the term "retirement" to mean "disability retirement," Prudential repeatedly characterizes Mindt's decision to apply for disability benefits as a calculated decision to swindle Prudential out of

monthly payments based on a nonexistent disability as a means to retire early. Based on a careful review of the entire record, this court finds these aspersions without merit. Mindt continued to work for 25 years after his initial injury. The record reveals that Mindt's condition is chronic and degenerative and fully explains the objective reason Mindt's difficulties have amplified closer to his 65th birthday than to his 40th. AR 224 (coworker attesting to increasing difficulties for five year period ending May 2003);[4] AR 182–83 (letter from Dr. Bangs noting the "degenerative" nature of Mindt's back condition and Mindt's "increasingly disabling back pain" over the course of 10 years of treatment). Dr. Bangs specifically notes that "[u]nfortunately, chronic pain from a degenerative back condition does not improve, but only gets worse as the deterioration continues with the aging [sic] process." AR 182. In other words, as Mindt has aged, his condition has worsened. Furthermore, given that the LTD benefit is 60% of Mindt's base earnings, he had very little incentive to stop working early.

■ Because Prudential's two primary reasons for rejecting Mindt's claim for benefits are without merit, the only remaining issue is whether, as a factual matter, Mindt's medical situation satisfied all three conditions in the LTD Plan's definition of "total disability." After conducting a searching *de novo* review of the record, this court concludes that it does.

■ This court has the authority to take additional evidence where the circumstances clearly establish that such evidence is necessary to conduct an adequate *de novo* review of the benefits determination. *Jebian,* 349 F.3d at 1110. However, in this case no such additional evidence is

---

**4.** Although the notarized statement by Mindt's coworker, Martha J. Detrick, is dated "May 03, 2001," it was signed on May 3, 2003, and

this court assumes that the reference to 2001 is a typographical error.

necessary. Mindt's complaints of disabling pain are fully supported by over two decades of medical records and by the affidavit of a coworker who observed him on a nearly daily basis for five years. That coworker and Mindt's treating doctor both noted the progressive nature of his difficulties. Moreover, Dr. Bangs advises that no further treatment options are available and that Mindt has severe disabling pain which will continue to worsen with age. Although Prudential requested an IME which never occurred, it does not appear to be necessary at this point. An IME can only address Mindt's current physical condition and not the critical issue of a change in condition in April 2002. Moreover, while this court is not bound by the Social Security Administration's findings, *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 832, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) (discussing "critical differences between the Social Security disability program and ERISA benefit plans"), it is of note that Mindt was awarded Social Security disability benefits upon his initial application.

A thorough *de novo* review of this record leads inexorably to the conclusion that Mindt's condition satisfies each condition of the LTD Plan's definition of "total disability." Accordingly, Mindt is entitled to an award of benefits under the LTD Plan, and Prudential's decision to the contrary must be overturned.

### CONCLUSION

For the reasons stated above, Mindt has exhausted his administrative remedies, is properly before this court, and is entitled to receive benefits under the terms of his LTD Plan with Prudential.

### ORDER

Prudential's decision denying benefits to Mindt under the terms of the Long–Term Disability Plan is reversed. Mindt shall submit a stipulated form of Judgment to the court on or before June 30, 2004.